**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JAMIE MEYERS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-11-3507 |
| | * | |
| MICHAEL LAMER, *et al*. | * | |
| | * | |
| Defendants. | * | |

******

**MEMORANDUM**

Plaintiff Jamie Lee Meyers filed this action against Defendants Carroll County Foods, LLC ("CCF") and Michael Eugene Lamer (collectively "Defendants"), alleging that he suffered serious injuries as a result of Mr. Lamer's negligent operation of a tractor-trailer owned by CCF. Defendants have filed a motion for summary judgment, [ECF No. 32], and Mr. Meyers has filed a cross-motion for summary judgment. [ECF No. 34]. I have reviewed both motions, the oppositions, and replies thereto. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the Defendants' motion for summary judgment is granted, and Mr. Meyers's motion is denied.

**I. Facts**

On February 16, 2009, Mr. Meyers was working as a traffic-signal repairman for Rommel Engineering & Construction, Inc. ("Rommel"). Def.'s Mot. Ex. 1 ("Meyers Dep."), 27:15-28:18. Mr. Meyers and his foreman, Eric Hatfield, were replacing a traffic light at the intersection of northbound Maryland Route 5 (Point Lookout Road) and Maryland Route 249 (Piney Point Road) in St. Mary's County, Maryland. *Id.* at 39:3-41:18. The roadway, facing

northbound on Route 5, consists of a shoulder, a travel lane, and left turn lane to Route 249. *Id.* at 51:21-53:14.

To replace the traffic signal, Mr. Meyers operated a boom-assisted bucket, attached to a truck that was parked on the shoulder of Route 5. *Id.* at 49:6-51:10. The boom-assisted bucket had internal controls that allowed Mr. Meyers to raise and lower the bucket, and to move it forwards and backwards. *Id.* at 60:16-62:14. Mr. Hatfield served as the "grounds man," or lookout to warn of approaching tractor-trailers. *Id.* at 58:8-60:15; Pl.'s Mot. Ex. 2 ("Hatfield Dep.") at 54:11-18. If a truck approached, Mr. Hatfield was supposed to notify Mr. Meyers, and Mr. Meyers would "boom straight up" to take the bucket out of the range of the truck. Meyers Dep. at 59:17-60:5.

Prior to beginning the repairs, at the direction of Rommel's superintendent, Dan McMunn, Mr. Meyers and Mr. Hatfield placed signs to warn approaching traffic that roadwork was being completed in the area. *Id.* at 46:11-47:12; 54:1-56:14. They set up traffic cones along the shoulder line starting approximately 100 yards before the work site. *Id.* at 49:9-50:5. Additionally, they activated flashing strobe lights on the rear of Mr. Hatfield's truck, which was parked directly past the bucket truck and entirely within the shoulder of Route 5. *Id.* at 44:17-18; 47:7-12; 50:16-20; 51:5-7; 57:21-58:5.

At approximately 10:15 a.m., Mr. Meyers entered the boom-assisted bucket, and he extended the bucket over the northbound lane of Route 5. *Id.* at 39:3-9; 62:12-14. At that time, Defendant Michael Lamer was traveling northbound on Route 5 in a tractor-trailer owned by Defendant CCF. The trailer struck the bottom of the bucket. *Id.* at 71:6-72:7. As a result, Mr. Meyers was ejected from the bucket and was restrained by the safety harness he was wearing. *Id.* at 38:11-14; 69:19-21. Prior to the impact, Mr. Hatfield did not warn Mr. Meyers that a

tractor-trailer was approaching. *Id*. at 86:15-87:2. Mr. Hatfield believed that Mr. Meyers's bucket was positioned above the height of tractor-trailer traffic. Hatfield Dep. at 31:1-8.

## II. Legal Standard for Summary Judgment

A motion for summary judgment is granted under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990). Summary judgment is precluded only when there are disputes over the facts that might affect the outcome of the proceedings under the applicable law. Factual disputes that are not relevant or not necessary will not be considered in a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of showing that there is no evidence to support the non-moving party's case, and the moving party must only show an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In response, the non-moving party must show that there is a genuine issue for trial. A court must decide whether there is a genuine issue for trial, "not . . . weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 242-43.

## III. Analysis

### a. Defendants' Motion for Summary Judgment

Defendants argue that summary judgment is appropriate, even assuming their own negligence, under the doctrines of assumption of risk and contributory negligence. This Court concurs that Defendants are entitled to summary judgment as a matter of law.

#### i. Assumption of Risk

Defendants contend that Mr. Meyers assumed the risk of his injuries. Under Maryland law, "assumption of risk is an affirmative defense that completely bars a plaintiff's recovery."

*Warsham v. James Muscatello, Inc.*, 189 Md. App. 620, 639 (2009).  The assumption of risk defense is "grounded on the theory that a plaintiff who voluntarily consents, either expressly or impliedly, to exposure to a known risk cannot later sue for damages incurred from exposure to that risk."  *Id*. at 167; *see also ADM P'ship v. Martin*, 348 Md. 84, 90-91 (1997).  To establish assumption of risk, a defendant must show that "the plaintiff: (1) had knowledge of the risk of danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger."  *ADM P'ship*, 348 Md. at 90-91; *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 630 (1985); *Schroyer v. McNeal*, 323 Md. 275, 283 (1991); *Odenton Dev. Co. v. Lamy*, 320 Md. 33, 43 (1990).  "Unlike contributory negligence, assumption of risk does not require a finding that the plaintiff was negligent.  The fact that the plaintiff was aware of the risk, and voluntarily undertook the risk, is sufficient."  *Warsham*, 189 Md. App. at 640 (internal quotations omitted).  While a jury typically determines whether a plaintiff assumed the risk, the court must make such a determination "when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger."  *Id.* (quoting *Schroyer*, 323 Md. at 283-84).

Defendants claim that Mr. Meyers had knowledge of the risk of danger of placing the bucket in an unblocked lane of travel in a position where it could be struck by a tractor-trailer, and that he appreciated that risk.  Def.'s Mot. 10.  Defendants further contend that Mr. Meyers voluntarily confronted that risk, because he alone controlled the placement of the bucket in the roadway.  *Id.*  Defendants note that Mr. Meyers was aware that he would have to "boom straight up" to take the bucket out of the range of an approaching tractor-trailer.  Meyers Dep. at 70:13-18.  Because a person of normal intelligence in Mr. Meyers's position would have understood the danger of being exposed in an unblocked roadway, Defendants argue that Mr. Meyers's claims must be dismissed because he assumed the risk of his injury.  Def.'s Mot. 10.

The question of whether the plaintiff had the requisite knowledge and appreciation to assume the risk of injury is an objective inquiry. *Am. Powerlifting Ass'n. v. Cotillo*, 401 Md. 658, 668-69 (2007) (quoting *Gibson v. Beaver*, 245 Md. 418, 421 (1967)). Under this standard, the courts are "not swayed by a plaintiff's subjective denial that he or she did not comprehend the extent of a clearly obvious danger." *Schroyer* 323 Md. at 284. In this case, however, Mr. Meyers subjectively knew and appreciated the risk of danger. At the time of his injuries, Mr. Meyers had been working as a repairman for approximately eight years for various construction and highway repair and management companies. Meyers Dep. at 150:13-20; 152:4-18. Throughout his employment, he continually received extensive training including maintenance of traffic training, flagging certification, safety guidelines and handbooks, weekly safety meetings, and safety prevention classes tailored specifically to boom-assisted bucket use. *Id*. at 30:12-32:17; 33:21-36:6; 93:14-18; 152:18-153:20. Moreover, when Mr. Meyers was asked if he does anything to look out for traffic during the time he actually operates the bucket, he replied, "[o]f course . . . because you don't want to get in a situation where you can get hit by a tractor-trailer." *Id*. at 62:8-21. These facts show that Mr. Meyers was aware of, and appreciated the risk of, injury involved with operating a bucket directly over an unblocked lane of travel. Mr. Meyers voluntarily confronted this risk when he controlled the bucket and placed it directly into an oncoming lane of travel.

Not only did Mr. Meyers have direct knowledge of the inherent risks of highway repair, but a person of normal intelligence would recognize that one of the risks inherent in roadwork over an unblocked lane is that he may get injured by oncoming traffic. The work is performed directly above cars and trucks traveling at high speeds, at a height where collision is a distinct

possibility. The recognized need for flaggers, cones, and other safety precautions reinforces the inescapable conclusion that there is a risk of injury.

Mr. Meyers argues that he did not assume the risk of a collision because he took adequate safety precautions, including the use of Mr. Hatfield as a "grounds man." Pl.'s Mot. for Summ. J., ECF No. 34, at 14. This argument is unpersuasive. The assumption of risk defense "operates independently of the conduct of another person." *Cotillo*, 401 Md. at 672. Therefore, a plaintiff may be found to have assumed the risk of injuries caused by the failure of others to act. *Id.* at 671 (weightlifter was held to have "assumed the risk that the spotters may have negligently failed to catch the bar because he knew that type of injury was foreseeable"). Moreover, it is highly foreseeable that Mr. Meyers would get injured even with a grounds man present. The grounds man might have his attention diverted from oncoming traffic, he might misjudge the bucket's height, the apparatus allowing Mr. Meyers to "boom straight up" may not work quickly enough to remove him from danger, or the sound of the traffic could make it impossible for Mr. Meyers to hear a warning. This Court finds, as a matter of law, that a person of normal intelligence could anticipate that he might be injured by operating a boom bucket, with his back turned to oncoming vehicles, at a height that could interfere with traffic, in an unblocked travel lane.

Finally, Mr. Meyers argues that he did not assume the risk because his actions were necessitated by his employment. Specifically, Mr. Meyers asserts that Mr. McMunn, Rommel's superintendent, dictated the set-up of the work site. The evidence establishes that Mr. Meyers had sole control of the placement of the boom-assisted bucket. Meyers Dep. at 61:18-62:14. Even if that were not the case, Maryland courts have held that an act is still voluntary when taken in the course of employment. *See Crews v. Hollenbach*, 358 Md. 627, 646 (2000); *ADM P'ship*,

348 Md. at 102.  More specifically, an employee assumes the risk even when he believes that his employment compelled a certain action, and even when he subjectively believes that his employment would have been at risk if he failed to take such action.  *See, e.g.*, *Crews*, 358 Md. at 648-51.  There must be evidence in the record to support the employee's belief that their employment would have been in jeopardy if they failed to act as instructed by their supervisor.  *Id.* at 649-51.  Mr. Meyers has not established that his job would have been in jeopardy had he requested a temporary lane closure to accommodate his work.  As a result, the doctrine of assumption of risk is applicable in his case.

### ii.  Contributory Negligence

Defendants also contend that Mr. Meyers's claims are barred by the doctrine of contributory negligence.  Def.'s Mot. 11-14.  In Maryland, contributory negligence is "the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances."  *Menish v. Polinger Co.*, 277 Md. 553, 559 (1976) (quoting *Potts v. Armour & Co.*, 183 Md. 483, 490 (1944)).  In short, contributory negligence occurs when "the injured party was or should have been aware of a dangerous situation and then failed to exercise ordinary care to protect himself."  *Leakas v. Columbia Country Club*, 831 F. Supp. 1231, 1235-36 (D. Md. 1993) (quoting *Hooper v. Mougin*, 263 Md. 630, 634 (1971)).  Contributory negligence is an absolute defense to a plaintiff's negligence claims.  *See Ramos v. S. Md. Elec. Coop., Inc.*, 996 F.2d 52, 54-55 (4th Cir. 1993).

Defendants argue that Mr. Meyers was contributorily negligent by: i) knowingly placing the bucket in an unblocked lane of travel; ii) placing the bucket at a height where it was interfering with traffic on the highway; iii) turning his back to oncoming traffic during a time that he knew the bucket was in an unsafe position; iv) failing to keep a proper lookout for

oncoming traffic; v) failing to take action to avoid an accident during a time when he knew the bucket was in an area where it could be struck by a vehicle; and vi) failing to take care and precaution for his own safety. Def.'s Mot. 13. Defendants also assert that Mr. Meyers cannot rely on any purported lookout provided by Mr. Hatfield to justify his own failure to protect his personal safety. Def.'s Mot. 13.

Assurances of safety provided by others do not relieve a person from the duty of caring for his own safety, and a person cannot rely on such assurances "where he is aware of the danger involved or where the danger is obvious enough that an ordinarily prudent person would not so rely." *Campbell v. Balt. Gas & Elec. Co.*, 95 Md. App. 86, 97 (1993) (quoting *Erdman v. Johnson Brothers*, 260 Md. 190, 205 (1970)). In *Campbell*, the plaintiff's supervisor examined the area prior to commencing work and determined that the power lines in the vicinity of the worksite did not present a danger. *Campbell*, 95 Md. App. at 95-96. The plaintiff relied on his supervisor's conclusions in completing his work, and was injured by the power lines. *Id*. Regardless, the court found the plaintiff contributorily negligent as a matter of law, because he could have and should have recognized the obvious danger of the power lines. *Campbell*, 95 Md. App. at 97. Like *Campbell*, Mr. Meyers cannot rely upon the specifications and direction from Mr. McMunn or any purported lookout provided by Mr. Hatfield to relieve him from the duty of caring for his own safety in the face of obvious danger.

Mr. Meyers and Mr. Hatfield had many safety precaution options available on the date of the accident, yet they failed to exercise them. Mr. Meyers and Mr. Hatfield did not place any signs which notified oncoming traffic that work was being done in the *travel lane*, but only that work was being done off of the *shoulder* of the roadway. *Id*. at 49:14-19; 56:11-14 (emphasis added). And, although cones were placed around the area, Mr. Meyers admitted in his

deposition that the cones did not block the travel lane of Route 5. *Id*. at 81:1-3. Instead, the cones were placed only along the demarcation line of the shoulder. *Id*. at 49:17-19; 56:11-14. Mr. Meyers and his colleagues also had the option of having a state trooper present to block off the lane and direct traffic, yet they chose not to request such assistance. *Id*. at 80:13-17. At the very minimum, Mr. Hatfield could have temporarily blocked off the lane with his truck, but instead he parked entirely within the shoulder of the roadway. *Id*. at 49:6-10. Hand-held stop signs to control the flow of traffic were available on both of the trucks, but were not used at any time during the work. Hatfield Dep. at 26:6-15. Finally, flaggers could have been used to control traffic within the travel lane. *Id*. at 26:4-5; Meyers Dep. at 90:14-91:9.

Mr. Meyers appreciated that his activity was potentially dangerous, yet he failed to take appropriate measures in the face of such danger. Mr. Hatfield's role as "lookout" did not relieve Mr. Meyers from the duty of caring for his own safety. Even if the ultimate decisions as to which safety measures to employ could not be made by Mr. Meyers unilaterally, at the time he controlled the bucket, he was aware that the travel lane remained open to all traffic. By extending his bucket in the vicinity of the travel lane in a position where it likely could be struck by approaching tractor-trailers, Mr. Meyers failed to care for his own safety despite an obvious danger and was, therefore, contributorily negligent as a matter of law.

### b. Mr. Meyers's Motion for Summary Judgment

Mr. Meyers has filed a cross-motion for summary judgment as to his claim of negligence. Mr. Meyers contends that Defendant Lamer was negligent in his operation of the tractor-trailer, causing Mr. Meyers's resulting injuries. Even assuming that Mr. Meyers can establish Mr.

9

Lamer's negligence, Mr. Meyers's contributory negligence and assumption of the risk preclude his recovery.[1]

### IV. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted. Mr. Meyers's Motion for Summary Judgment is denied. A separate Order follows.

Dated: March 29, 2013

/s/
Stephanie A. Gallagher
United States Magistrate Judge

---

[1] Even absent the contributory negligence and assumption of risk by Mr. Meyers, summary judgment in his favor would be inappropriate. Material factual disputes remain regarding the observance of warning signs, Mr. Lamer's cell phone use, the speed of Mr. Lamer's tractor-trailer, his use of the tractor-trailer's horn, Mr. Lamer's ability to avoid the bucket or change lanes, and Mr. Lamer's assessment of clearances. Def.'s Mot., Exs. 1-4, 8-9.